UNITED STATES OF AMERICA,

    Plaintiff,

v.

BEKAM ADDISSU MERDASSA,

    Defendant.

Case No. 22-cr-00237 (NEB)

**DEFENDANT BEKAM ADDISSU MERDASSA'S POSITION REGARDING SENTENCING**

Bekam Merdassa is part of the massive tragedy that is Feeding Our Future. To be sure, Mr. Merdassa is responsible for his choices and has accepted his responsibility for his role in this case. However, when the Court looks at his life – but for this case – it reflects the American dream: an immigrant who comes to this country, and through education, hard work and determination obtains his dream. He became an aeronautical engineer working for Blue-chip company in the aerospace industry. That dream is now gone.

On the same day Mr. Merdassa became aware of a federal criminal investigation and search warrants, January 20, 2022, Mr. Merdassa, riddled with guilt regarding his involvement, engaged an attorney through whom Mr. Merdassa contacted the U.S. Attorney's Office and began a journey of redemption. Based on the totality of facts set forth below, including his minor role in the offense and his early assistance in this case – which was provided immediately and 9 months prior to any charges in the Feeding Our Future investigation – Mr. Merdassa respectfully requests a term of two years of probation along with his restitution order. Mr. Merdassa acknowledges this would represent a two-

year departure from the Parties' negotiated guideline range, but it is warranted in light of his early and substantial cooperation in this investigation, in which he was the very first defendant to acknowledge his guilt (long before any criminal charges), and the first to plead guilty, thereby establishing in the public sphere the veracity of the government's charges.

### BACKGROUND OF THE CASE

There is really no dispute regarding the facts of Mr. Merdassa's involvement in the Feeding Our Future scheme or the nature of his cooperation.

In 2017, long before the fraud, Mr. Merdassa had an idea of using his engineering background to help kids develop an interest in science, and he created Youth Inventors Lab ("YIL"), a non-profit organization. Mr. Merdassa was occupied with other endeavors, namely working as an aeronautical engineer, and YIL was left untended.

In late 2020, during the COVID era, Mr. Merdassa was approached by a person who had been a friend for a number of years, who proposed using YIL for a child food-support program. Mr. Merdassa did not know the details of the program or what his friend had in mind, but he thought it would be a good idea. By early 2021, claims for reimbursement for meals for children were submitted for the YIL site, which was a property provided by Mr. Merdassa's friend. Typically, these claim forms were prepared by others and often signed by others, as Mr. Merdassa did not know who was supposed to be providing the food or who was being served. However, Mr. Merdassa knew these claim forms had to be inaccurate as they purported to have served meals in December 2020 – which he knew could not have been true. Over the course of the months in which YIL participated in the scheme in 2021, Mr. Merdassa also allowed the YIL bank account to be used, for which he

was allowed to keep approximately 10 percent of the $3 million deposited in the YIL bank account. Thus, while Mr. Merdassa played a small role in his portion of the scheme, which was organized and perpetrated by others, he acknowledges knowingly allowing his organization and the organizational bank account to be used.

On January 20, 2022, federal investigators executed a search warrant at the YIL location, among many other locations relating to the Feeding Our Future fraud scheme. This marked the publicly visible beginning of the federal criminal investigation into the Feeding Our Future fraud.

Federal agents also attempted to interview Mr. Merdassa, who declined to speak with them. However, the very same day, Mr. Merdessa engaged counsel on his behalf and authorized outreach to the U.S. Attorney's Office to provide assistance. Within days, Mr. Merdassa agreed to proffer.

On February 6, 2022, without promises regarding charging decisions, Mr. Merdassa proffered with the U.S. Attorney's Office and federal agents. During that interview, Mr. Merdassa truthfully disclosed what he knew about the fraud, as well as his own involvement. According to the U.S. Attorney's Office, Mr. Merdassa was the first person to acknowledge his own participation in the fraud, thereby confirming its existence. This occurred seven months before any criminal charges were filed.

On July 18, 2022, again without promises regarding charging decisions, Mr. Merdassa again interviewed with the U.S. Attorney's Office and federal agents, providing them with additional information relevant to evidence the government had collected during the intervening five months.

In August 2022, Mr. Merdassa waived his Fifth Amendment rights and testified before the grand jury, again without promises regarding charges.

In September 2022, the U.S. Attorney's Office filed a criminal information against Mr. Merdassa, who then pleaded guilty on October 13, 2022. <u>Mr. Merdassa was the very first defendant to plead guilty in the Feeding Our Future prosecution</u>.

Between February 2022 and October 13, 2022, Mr. Merdassa traveled internationally twice. He had ample opportunity to flee prior to any charges. Yet, he did not. Instead, although he had not been charged with any crime, he was transparent with the U.S. Attorney's Office regarding his travel plans and returned to Minnesota to face whatever was to come.

In July 2022, through counsel, Mr. Merdassa also started communicating with the U.S. Attorney's Office about funds that were available for restitution, even though he had not been charged. Immediately following his guilty plea, Mr. Merdassa turned over $38,154.24 in checks to the U.S. Marshal's Service for purposes of his restitution obligation. Another check for $17,897.95 was turned over to the federal government in February 2023.

It has been three and a half years since his guilty plea, and more than four years since his first proffer. That is an unusually long period between a guilty plea and sentencing. In the interim, Mr. Merdassa was available to testify and was interviewed two additional times in 2025 at the U.S. Attorney's Office related to specific upcoming trials. Ultimately, the entire branch of the scheme in which Mr. Merdassa was directly involved

pleaded guilty without the need for the U.S. Attorney's Office to expend time and resources on a trial. This happened, in part, due to the cooperation provided by Mr. Merdassa.

Thus, long before charges were filed in Mr. Merdassa's case, or in the Feeding Our Future investigations, Mr. Merdassa did everything in his power to accept responsibility and to acknowledge what he knew and what he did, and to assist with the investigation into what happened.

## THE SENTENCING GUIDELINE CALCULATION

Consistent with the plea agreement, the parties are aligned on the appropriate range; based on adjusted offense level of 17, and a criminal history category of I, the appropriate guideline range is 24-30 months of imprisonment.

The Presentence Report provides for an additional 2-level enhancement under U.S.S.G § 2B1.1(b)(12). Both parties objected to the enhancement, consistent with the plea agreement. While Mr. Merdassa does not object to the underlying facts relied on by the Presentence Report in applying this enhancement, Mr. Merdassa asks the Court to vary to give effect to the benefit of the bargain for Mr. Merdassa's early plea in this matter.

## THE SECTION 3553 FACTORS SUPPORT A DOWNWARD VARIANCE

Title 18, Section § 3553 guides and governs the Court's sentencing of Mr. Merdassa. *See Gall v. United States*, 552 U.S. 38, 46 (2007) (clarifying that 18 U.S.C. § 3553(a) is the controlling law of sentencing, and the Sentencing Guidelines are merely advisory). Section 3553(a) directs that the Court should impose a sentence that is sufficient, but not greater than necessary, to comply with the following purposes: (A) to reflect the seriousness of the offense, promote respect for the law, and provide just

punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with the needed correctional treatment. Section 3553(a) also sets forth several criteria the Court must consider in determining the appropriate sentence: (1) the nature of the offense and the history and characteristics of the defendant; (2) the purposes of sentencing; (3) the kinds of sentences available (i.e. alternatives to prison); (4–5) the Sentencing Guidelines and their Policy Statements, which are advisory; (6) avoiding disparity in treatment of similar offenders; and (7) the need to provide restitution.

As the Court knows, the undisputed Guidelines range is only the starting point of the analysis.

## I. The History and Characteristics of Mr. Merdassa

In determining a just sentence, this Court is "not only permitted, but required, to consider the history and characteristics of the defendant." *United States v. Chase*, 560 F.3d 828, 830 (8th Cir. 2009) (internal quotation omitted) (quoting *United States v. White*, 506 F.3d 635, 644 (8th Cir. 2007)). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

As set forth in the Presentence Report, aside from this massive failure in judgment, in which Mr. Merdassa knowingly allowed himself to be used to perpetrate a substantial fraud, Mr. Merdassa has demonstrated himself to be a law-abiding citizen. He has no

criminal history points. He has sought education, achieved success in that endeavor, and was a valuable, contributing member of society, prior to his plea. Although he had always dreamed of being an aeronautical engineer—and achieved that dream—he knows he has now forfeited that dream forever. Following his plea, his security clearance was withdrawn and his employment was terminated. That is the heavy price he paid and will continue to pay.

Since his plea, Mr. Merdassa has had to live with the cloud of this matter over his head for years – essentially living in limbo. Immediately following the plea, he was terminated from his employment and has been effectively barred from the industry, because of his inability to obtain a security clearance. Thus, the guilty plea itself altered his ability to practice his chosen field – and his financial prospects – forever. Unable to find meaningful employment, Mr. Merdassa was forced to travel abroad, with the Court's permission, working on small projects, including agricultural projects.

Mr. Merdassa is a talented man who will, eventually, find his footing. It is clear from his path that his criminal conduct here represents an aberration. He plainly regrets his conduct and will not recidivate.

## II.     The Nature and Circumstances of the Offense

To be sure, the fraud in this matter is enormously serious. Yet, it is important to note that the fraud tied to Mr. Merdassa's YIL organization represents only a small percentage of the overall fraud, roughly three million dollars. There is no dispute that he was a minor player. He was not an organizer or perpetrator, but someone who allowed his non-profit to be used. Thus, Mr. Merdassa played only a small role in this fraud.

**III.      Just Punishment and Adequate Deterrence**

The sentence must also reflect what Mr. Merdassa has done since he learned of a federal investigation and the support he brought to the U.S. Attorney's effort.  It was immediate.  It was timely.  It was substantial.  It resulted in guilty pleas by all of the numerous individuals charged in the "S&S" indictment.  Mr. Merdassa was interviewed multiple times in 2022 and appeared before a grand jury, all before anyone was charged with a crime.  Since then, he has helped the government prepare for at least two separate trials.  This is exactly the kind of valuable assistance needed by federal prosecutors.  Mr. Merdassa was the very first domino to fall – and accordingly, he merits heavy consideration for that decision and the time he has spent waiting in limbo for his cooperation to be fully utilized.

Finally, he has made significant efforts to turn over available assets for purposes of restitution.

**<u>CONCLUSION</u>**

For the foregoing reasons, to reflect the *substantial and early assistance* provided by Mr. Merdassa, we respectfully request a term of two years of probation.

Dated:  March 23, 2026

*s/ Joseph T. Dixon*

Joseph T. Dixon (#0283903)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street
Suite 1500
Minneapolis, MN  55402-4400
(612) 492-7000
jdixon@fredlaw.com

***Attorney for Defendant***

#91101178v2